VAN CAMP SEA FOOD CO., Inc., v. WESTGATE SEA PRODUCTS CO.

Patent Appeal No. 2709.

Court of Customs and Patent Appeals.
April 29, 1931.

Albert J. Fihe, of Chicago, Ill., for appellant.

James M. Naylor, of San Francisco, Cal. (Chas. R. Allen, of Washington, D. C., and Wm. S. Graham, of San Francisco, Cal., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

■ This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences dismissing the opposition of appellant and holding that appellee was entitled to the registration of the trade-mark "Breast O' Chicken" for use on canned fish.

In its application for registration filed December 13, 1926, appellee alleged that it had used the trade-mark since November 4, 1926.

It appears from the record that appellant is the owner of trade-mark registration No. 97,192, issued to the White Star Canning Company, May 19, 1914, of the trade-mark "Chicken of the Sea" for use on tuna fish; that appellant and its predecessor have used the registered trade-mark continuously on tuna fish throughout the United States and in foreign countries since prior to 1914; and that appellant has expended large sums of money in advertising its product and its trade-mark.

Several witnesses for appellant testified that, in their opinion, the use by appellee of its mark "Breast O' Chicken" would cause confusion in trade.

It further appears from the record that appellant filed suit against appellee in the United States District Court, Southern District California, Southern Division, in which it was alleged that the use by appellee of its trade-mark was an infringement of appellant's registered trade-mark. This suit was dismissed by the District Court on motion by appellee. On appeal to the Circuit Court of Appeals, Ninth Circuit, the decree of the District Court was affirmed. Van Camp Sea Food, Inc., v. Westgate Sea Products, 28 F. (2d) 957, 958.

In its decision, the Circuit Court of Appeals stated that both parties had caused their trade-marks to be registered. Thereupon, the court, among other things, said: "Were the word 'chicken,' common to the two trade-marks, a purely fanciful term, and made equally prominent in both, we might have a case of sufficient doubt to warrant a hearing of evidence. But, as registered, the two combinations are similar neither in appearance nor in sound, and if, as appellant contends, it be conceded that 'chicken' is the dominant word in its combination, it cannot be said to have such prominence in that of the defendant. Moreover, 'chicken,' as used by the plaintiff, is not a purely fanciful term, but is measurably descriptive. True, in its primary or most popular meaning, it designates the young of the domestic hen, and less commonly, the young of wild birds, but it is sometimes used to denote living things of the sea as well as of the land. Its application has been so extended apparently because in a figurative sense it has come to signify something young and tender."

After some further discussion of the question of the descriptiveness of the involved trade-marks, the court stated that its decision should not be understood as holding that appellant's trade-mark registration was invalid.

However, it is evident from its decision that the court was of opinion that both marks were descriptive. To what extent it was influenced in holding that the involved marks were not confusingly similar, by its views that they were descriptive, we do not know. But, however that may be, if the involved marks are descriptive, the tribunals below erred in holding that appellee was entitled to have its mark registered.

Appellee concedes that appellant's trade-mark is valid, and that question is, therefore, not before the court in this case.

The question of the descriptiveness or misdescriptiveness of appellee's mark is involved in the issue of the right of registration. However, in view of the conclusion we have reached as to the confusing similarity of the marks, we find it unnecessary to consider other issues.

Appellant has popularized its goods and its trade-mark. It has expended thousands of dollars in advertising them throughout the United States, and its trade-mark "Chicken of the Sea" is undoubtedly of very great value. Although its goods possessed the same descriptive properties, and were sold in the same market and in the same stores as the canned fish of appellant, appellee, in 1926, adopted and used the trade-mark "Breast O' Chicken" on canned fish.

It is true, as argued by counsel for appellee, that the involved trade-marks are not identical either in appearance or in sound. However, the mark of appellee includes, as its dominant feature, one of the dominant features of appellant's mark—the word "Chicken"—and closely simulates appellant's trade-mark.

The law does not require that, in order that confusion, mistake, and deceit may be avoided, trade-marks used on such a common and widely used article of food as canned fish shall be carefully analyzed and dissected by the consuming public. Lever Brothers Co. v. Riodela Chemical Co. (now by Change of Name the Tex Co.), 41 F.(2d) 408, 17 C. P. A. 1272.

The general purpose of the law of trade-marks is to prevent "one person from passing off his goods or his business as the goods or business of another." California Packing Corporation v. Tillman & Bendel, 40 F. (2d) 108, 110, 17 C. C. P. A. 1048; B. F. Goodrich Co. v. Clive T. Hockmeyer et al., 40 F.(2d) 99, 17 C. C. P. A. 1068, and cases cited.

Although there is nothing in the record to establish affirmatively that appellee designedly simulated appellant's trade-mark, nevertheless, considering the similarity of the marks and other facts and circumstances of record, it would seem to be clear that the use by appellee of its trade-mark concurrently with the use by appellant of its trade-mark would cause confusion in the mind of the public, and would result in appellee trading on appellant's good will and popularity, with corresponding damage to both the public and appellant.

The decision is reversed.

Reversed.