40 C.C.P.A. (Patents)

**Application of PRUTTON.**

Patent Appeals No. 5975.

United States Court of Customs and Patent Appeals.

June 24, 1953.

Oscar C. Limbach and Oberlin & Limbach, Cleveland, Ohio (Almon S. Nelson, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

COLE, Judge.

Alleging certain inventive improvements in a lubricating composition, the appellant herein, on March 31, 1947, presented his application (Serial No. 738,497) to the Patent Office in which fifty-six claims were asserted. The Primary Examiner and the Board of Appeals, in concurring opinions, denied all of the claims of said application on the ground of res judicata, an unsuccessful prosecution of appellant's earlier (parent) application (Serial No. 416,753, filed October 27, 1941) in which successive appeals to the District Court and Court of Appeals for the District of Columbia resulted in final and conclusive determination that the subject matter therein claimed was unpatentable in view of the prior art of record, allegedly presenting justification therefor. Prutton v. Marzall, Commissioner of Patents, 89 U.S.App.D.C. 144, 191 F. 2d 341. Finding no essential distinction between the claims of the two applications, the Patent Office applied the principle of res judicata in the instant case, and the appellant challenges the correctness of that decision in this appeal.

Before proceeding with a discussion of the appellant's disclosures, it is well to note that in the litigation involving the parent application the appellant delayed filing an

affidavit under old Rule 75 which, if it had been seasonably filed, would have antedated the reference patents then cited in opposition to patentability. On appeal to the District Court, following the refusal of the Patent Office to entertain said affidavit, appellant again sought to introduce the affidavit. This action was denied by the District Court; in the same proceeding, however, the Solicitor for the Patent Office made three new patents of record as prior art—Salzberg et al. (2,063,629), Morway (2,109,779), and Shoemaker et al. (2,191,996). These references could not be antedated by the appellant, and the Court of Appeals, without directly ruling on the evidential issue concerning the affidavit, affirmed on the basis of the prior art represented by the Salzberg, Morway, and Shoemaker patents. Prutton v. Marzall, Commissioner of Patents, supra.

In this proceeding, the appellant has moved to dismiss his appeal as to claims 3 to 11, 16, 19 to 22, 28 to 39, 45 to 47, and 52 to 56. The motion being allowed, the remaining claims are 1, 2, 12 to 15, 17, 18, 23 to 27, 40 to 44, and 48 to 51. As stated by the solicitor, it is obvious that "the claims stand or fall together." Claims 1 and 44 are considered representative and read as follows:

"1. A lubricating composition comprising a hydrocarbon lubricating oil, the ability of which to more fully perform the lubricating function under a wide variety of conditions, is, in part at least, dependent upon the combined presence therein of an oil soluble organic compound functioning as a detergent and an oil soluble organic non-metallic compound containing an element of the class consisting of sulphur and selenium in such form that, of the total sulphur and selenium present in the entire composition, more than 1%, based on such component, will react with copper at a temperature of 250°C. and less than 0.1% at 100°C.

"44. A lubricating composition comprising a major amount of a hydrocarbon lubricating oil and the combination of (a) a detergent and (b) a sulphur-containing inhibitor in such an amount and with the sulphur in such

form that, of the total sulphur present in the entire composition, more than 0.01% of sulphur based on the weight of the lubricating composition, will react with copper at 250°C. and less than 0.001% at 100°C."

The application thus teaches the alleged success of adding certain agents to a mineral lubricating oil base for the claimed purpose, and with the claimed result, of securing more beneficial and effective lubrication than heretofore has been proposed or accomplished by prior art disclosures. The oil soluble addition agents claimed in the composition amount to a component acting as a detergent and a sulfur containing inhibitor (non-metallic) which is reactive within a particular range.

It is known that of the shortcomings inherent in conventional uses of hydrocarbon lubricants as such (in an internal combustion engine, for example), the tendency toward deterioration or decomposition of the oil as well as its inability to withstand high film pressures are foremost. Addition of a detergent to the oil base (in combination with a corrosion inhibitor) cuts down the amount of varnish-like deposits formed by decomposition of the lubricant under conditions of operation, while the inclusion of sulfur in the composition effects a material reduction in corrosion (particularly of the soft metal parts of the engine) through the formation of a protective film on said working parts.

Concededly, the addition agent art is not a new concept originating with appellant in the appealed claims. It is, however, asserted by appellant that his manner of fortifying the ordinary mineral lubricating oil with the stated addition agents of specified form and amount is novel and patentable. In his specification, appellant states:

"In order to produce a lubricating composition which will have the desired combination of a reduced tendency to form deleterious deposits and a reduced tendency to be corrosive, I have found that the inclusion together with a detergent, either in the same or in a separate compound, of a sufficient amount of sulphur or selenium, in a particular range of activity, is highly effective.

"The inhibitor to be used should contain sulphur or selenium in such form that a substantial amount, sufficient to effectively prevent corrosion of bearing metals, will react with copper at a temperature above 250°C., and only an inconsequential amount will react with copper at a temperature below about 100°C."

Appellant takes the position in this appeal that the claims involved herein do not mean essentially the same thing as the claims presented and rejected in the parent application, but contends that they are patentably distinct therefrom; and that the composition recited in the appealed claims is not anticipated by any prior art disclosures.

▆▆▆ The cases of In re Becker, 74 F. 2d 306, 22 C.C.P.A., Patents, 843, and Lavin v. Pierotti, 129 F.2d 883, 29 C.C.P.A., Patents, 1235, and others, clearly makes the doctrine of res judicata applicable to decisions of the Patent Office tribunals and courts in patent litigation. There can be no question as to that. Proceeding upon that premise, therefore, that such a doctrine is applicable if the facts justify it, let us look at the record. In so doing, should the claims of the application in the earlier litigation (Serial No. 416,753) and the application at bar be found to be identical or sufficiently similar, then the appellant's case must fall.

In his brief, the appellant sets forth the essence of the instant controversy in the following language:

"* * * Appellant, in the present claims here on appeal, as distinguished from the claims in the parent case, and also the prior art patents, include the recitation that "the total sulfur and selenium present in the entire composition" conform to a certain sulfur reactivity. This statement that the certain sulfur reactivity was possessed by the 'total sulfur and selenium present in the entire composition' was not present in the claims in the prior case. Thus, appellant's claims are distinct from the claims of the prior case."

In substance, therefore, the only material distinction between the claims of the two applications is found to reside in the inclusion of an additional limitation in the claims now on appeal—a clause reading, "the total sulfur and selenium present in the entire composition."

In deciding the question of patentability of the claims presented in the parent application, the Court of Appeals, supra [89 U.S.App.D.C. 144, 191 F.2d 342], said:

"The essential point which appellants urge is that their formula provides a definition of the amount of sulphur to be added and specifies the narrow range of that amount. Their brief says, in this respect:

*   *   *   *   *   *

" 'First, no one prior to the Appellant Prutton ever taught the use of a lubricant which contains sulphur in the character and amount specified; and

" 'Second, no one prior to the Appellant Prutton ever proposed the combined use with such *character* and *amount* of sulphur, of a material which functions as a detergent.' [Italics quoted.]

*   *   *   *   *   *

" * * * These patents [the Morway, Salzberg, and Shoemaker prior art references relied upon by the court], taken together, clearly showed the usefulness in lubricant formulas of detergents and of sulphur-containing corrosion inhibitors. [Morway shows the combination of a detergent and inhibitor in the same composition]. Appellants must therefore urge some new factor. This they do by contending that their formula teaches the use of sulphur of prescribed character in prescribed amounts, on a controlled-activity basis."

The Court of Appeals then discussed in detail the "control aspects" of appellant's formula, but concluded that the claimed sulfur reactivity failed to patentably differentiate over the prior art. The court called attention to the fact that the Morway patent "did not contemplate that the use of sulphur would be uncontrolled", but that Morway "gave a special definition of the sulphur to be used, and provided for activity tests." Moreover, the court particu-

larly pointed out that "Only a portion of the sulphur used by Morway was to be in the so-called 'corrosive' form."

The appellant herein does not dispute the correctness of the rulings set forth by the Court of Appeals in that case, nor does he take issue with the pertinency of the prior art as negativing invention in the claims of his parent application. Appellant concedes that the rejected claims therein were sufficiently broad to include corrosive sulfur as well as sulfur of the desired reactivity. Appellant maintains, however, that the instant claims, by reciting that the sulfur reactivity is true of the *total amount of sulfur in the entire composition,* exclude corrosive sulfur and present an invention of the highest order, not anticipated by the prior art or heretofore claimed in the parent application.

It is our opinion that the appealed claims, as written, do not warrant the construction placed thereon by appellant. We do not think that the claims in issue can be interpreted to mean that all the sulfur in the compound responds to the claimed reactivity, or that all corrosive sulfur is eliminated from the composition. The appealed claims do not appear to exclude the presence of corrosive sulfur in the composition any more than did the claims rejected by the Court of Appeals in the parent application.

In any event, if the claims are in any way ambiguous in meaning, as we think they are, a broad interpretation thereof is required, and upon looking to the specification of the instant application, there is but a vague reference relative to the total amount of active sulfur. It fails to adequately support the construction of the claims urged upon us by appellant.

Indicative of the shortcomings to be found in appellant's position is the following from the brief of the Solicitor for the Patent Office with regard to claim 44, previously quoted in full:

"* * * it states [claim 44] that the sulfur containing inhibitor is 'in such an amount' and with the sulfur 'in such form' that 'of the total sulfur present' in the entire composition more than 0.01% of the sulfur will react with copper at 250°C. and less than 0.001% at 100°C. What amount of sulfur is present in the composition is not stated; the amount may approach 50% as an upper limit, since the only quantitative limitation in the claim is on the amount of lubricating oil, stated as "a major amount." While 50% would be more than the 0.01% set forth in the claim, it is not clear how that amount could be reconciled with the less than 0.001% limitation. * * * It is submitted that the claim means simply that an indefinite amount (less than 50%) of a sulfur containing inhibitor is present in the composition, with the sulfur present in such form that more than 0.01% of the total sulfur will react with copper at 250°C. and less than 0.001% at 100°C., and that it is essentially the same as the claim of the prior case."

The fact that appellant does not deny that the application disclosure of the parent case is the same as that presently relied upon to support the appealed claims is not decisive of the issue herein with regard to the applicability of the doctrine of res judicata. It was incumbent upon appellant, however, to exhibit a patentable distinction in the subject matter of the present claims, and having failed in this endeavor, we are unwilling to read into those claims a limitation which does not clearly depart in meaning from that previously set forth and rejected on prior art references. There being no patentable difference in the claims of the two applications, the previous rejection is wholly conclusive and no longer open to further litigation.

Inasmuch as the claims in the earlier application were rejected in view of reference patents having a date prior to any date sought to be established by appellant in introducing the affidavit aforementioned, and the claims herein being essentially identical thereto, as we have determined herein, it is not seen how the appellant seeks to prevail by arguing that the affidavit should have been received as evidence to support his contention. In any event, we do not

regard the position of the affidavit in this case as having any bearing on the ultimate conclusion expressed herein.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate herein in place of GARRETT, C. J.